IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GREG HEIDLER, | CIV. NO. 11-00427 JMS/RLP |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS OR, IN THE ALTERNATIVE, FOR TRANSFER OF VENUE |
| vs. | |
| ASSOCIATION OF FLIGHT ATTENDANTS-CWA; UNITED AIRLINES, INC.; UNITED CONTINENTAL HOLDINGS, INC.; ET AL. | |
| Defendants. | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS OR, IN THE ALTERNATIVE, FOR TRANSFER OF VENUE**

**I. INTRODUCTION**

Defendant Association of Flight Attendants-CWA ("AFA"), and Defendants United Airlines, Inc. and United Continental Holdings, Inc. (referred to together as "United") (collectively "Defendants") move to dismiss *pro se* Plaintiff Greg Heidler's ("Plaintiff" or "Heidler")[1] Amended Complaint, or in the alternative, to transfer venue to the United States District Court for the Northern

---

[1] Although Plaintiff is proceeding *pro se*, he is an active member of the Hawaii State Bar.

District of Illinois. United also substantively joins in AFA's Motion. The Motions primarily argue that the Amended Complaint is barred by a six-month statute of limitations. As explained below, the Motions are GRANTED IN PART and DENIED IN PART.

Claims remain if based upon Plaintiff's allegation that the AFA breached a duty of fair representation by withdrawing Plaintiff's grievance on April 15, 2008. Other claims are dismissed as time-barred, or as preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*. The court declines to transfer venue to the Northern District of Illinois.

## II. BACKGROUND

### A. Factual Background

The court assumes the factual allegations of the Amended Complaint are true for purposes of these Motions, *see, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003), and recites only the allegations necessary to explain its rulings.

United employed Heidler as a flight attendant from June 9, 1997 until June 1, 2005, when it discharged him for failure to complete training. Doc. No. 34, Am. Compl. ¶¶ 6, 12. He had been on furlough starting on August. 31, 2003, but had been recalled effective June 1, 2005. *Id.* ¶¶ 10, 11. After his separation,

Heidler requested a grievance hearing under the applicable collective bargaining agreement ("CBA"). *Id.* ¶ 15. On April 28, 2006, United found the separation to have been proper. Thereafter, on May 26, 2006, the AFA (as the collective bargaining representative for United flight attendants) appealed the grievance to the System Board of Adjustment. *Id.* ¶ 16. In this suit, among other claims, Plaintiff contends that United improperly separated him in violation of the CBA. *Id.* ¶¶ 17-19.

"On May 18, 2007 and September 18, 2007 AFA notified Plaintiff in writing that they no longer represented Plaintiff in the grievance and that if he chose to proceed to System Board of Adjustment for Arbitration of his grievance he would be doing so at his own expense and they would notify [United] that they were no longer representing plaintiff." *Id.* ¶ 21.

Although not clear, even though the AFA "no longer represented Plaintiff," it apparently remained involved with his grievance.[2] According to the Amended Complaint, the "AFA on February 1, 2008 informed Plaintiff that he would be required to arbitrate his case on April 24-25[, 2008] and Plaintiff stated that was not enough time to prepare for his Arbitration." *Id.* ¶ 22. Plaintiff

---

[2] Plaintiff argues in his Opposition -- unsupported by any allegations in the Amended Complaint -- that an AFA attorney assured him that the "AFA would only withdraw his grievance if he did not wish to pursue the grievance" and the "AFA's only remaining role was to assist in the scheduling of his arbitration." Doc. No. 48-1, Pl.'s Opp'n at 15.

3

developed "adhesive capsulitis (frozen shoulder)" in February 2008, which prevented him from passing a physical, attending training or returning to work," *id.* ¶ 23, and he notified the AFA of his condition by phone and email. *Id*. ¶ 24. "On March 20, 2008 Plaintiff received [a] 'take it or leave it' letter from AFA in violation of CBA requiring him to arbitrate his grievance in Chicago on July 16-17[,] 200[8]." *Id.* ¶ 25. Plaintiff responded to the AFA's March 20, 2008 letter as follows:

> On April 2, 2008 plaintiff mailed [a] letter to AFA informing them of his unreturned attempts at communication, inability to Arbitrate on the date they mandated, desire to Arbitrate his case when his shoulder was healed and reminded AFA that he was proceeding to arbitration on his own, at his own expense and that AFA had chosen to cease representing him in said grievance. Plaintiff also informed AFA that there was no authority in [the] CBA for them to force arbitration on dates they selected or withdraw grievance without plaintiff's consent when they no longer represented him.

*Id.* ¶ 26.

Despite Plaintiff's April 2, 2008 letter, the AFA appears to have withdrawn the grievance in some manner. "In January 2011, plaintiff's shoulder injury had sufficiently resolved and was notified for the first time on January 20, 2011 by AFA that his grievance was improperly withdrawn on April 15, 2008." *Id.* ¶ 27. Similarly, on January 29, 2011, United informed Plaintiff that it was

4

unaware that the AFA did not represent Plaintiff and that Plaintiff's grievance "had been withdrawn April 15, 2008 under [the] assumption he assented" to the withdrawal, and that United "had no intention of returning Plaintiff's calls or reinstating him now[.]" *Id.* ¶ 28. In this suit, in addition to the claim against United, Plaintiff contends that the AFA breached a duty of fair representation by, among other reasons, failing to represent him in the grievance and by withdrawing his grievance (without telling him) on April 15, 2008. *Id.* ¶ 29.

**B.    Procedural Background**

Plaintiff filed suit on July 5, 2011. Doc. No. 1. In lieu of answers, Defendants filed Motions to Dismiss or, in the alternative, for Transfer of Venue. Plaintiff responded on October 18, 2011 with an Amended Complaint indicating his suit was being brought under the RLA (and not under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 *et seq.*, as alleged in the original Complaint). Doc. No. 34. Defendants filed revised Motions to Dismiss or, in the alternative, for Transfer of Venue, Doc. Nos. 38-39, and United substantively joined in the AFA's Motion. Doc. No. 41. Plaintiff filed an Opposition on December 12, 2011, Doc. No. 48, and Defendants filed Replies on December 19, 2011. Doc. Nos. 51-52. The court heard the Motions on January 9, 2012.

## III. STANDARDS OF REVIEW

### A. Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Id.*

A claim may be dismissed under Rule 12 as "barred by the applicable

statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). Such motion should be granted "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000) (citation omitted).

**B.     Transfer of Venue Under 28 U.S.C. § 1404(a)**

Under 28 U.S.C. § 1404(a), "the district court has discretion 'to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). A motion to transfer venue should be granted where the defendant "make[s] a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The moving party has the burden to prove that an alternative forum is more appropriate for the action. *Jones*, 211 F.3d at 498.

///

///

## IV. **DISCUSSION**

A. **Statute of Limitations**

The parties do not dispute that Plaintiff's Amended Complaint is a hybrid action under the RLA, and thus the claims are subject to a six-month limitation period. *See, e.g.*, *Kelly v. Burlington N. R.R. Co.*, 896 F.2d 1194, 1195 (9th Cir. 1990). To prevail on such a hybrid claim against the employer and the union, a plaintiff must show that the termination violated the CBA and that the union breached its duty of fair representation. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983). "The statute of limitations begins to run when a plaintiff 'knew, or should have known, of the defendant's wrongdoing.'" *Stone v. Writer's Guild of Am. W., Inc.*, 101 F.3d 1312, 1314 (9th Cir. 1996) (quoting *Allen v. United Food & Commercial Workers Int'l*, 43 F.3d 424, 427 (9th Cir. 1994)).

Applying *Stone*, any events accruing before January 5, 2011 -- six months prior to the filing of this action -- are time-barred. It cannot be disputed that Plaintiff's claims are barred to the extent based on the AFA (1) "failing to represent Plaintiff in Arbitration of his meritorious grievance," Doc. No. 34, Am. Compl. ¶ 29; (2) "forcing Arbitration dates upon Plaintiff after it was no longer representing him," *id.*; and (3) "ignoring Plaintiff's communications regarding the

8

scheduling of his Arbitration." *Id.* By his own allegations, Plaintiff admits he knew of these events in 2007 (when AFA wrote letters to Plaintiff "that they no longer represented Plaintiff in the grievance," *id.* ¶ 21) or in 2008 (when AFA notified Plaintiff of April 24-25, and July 16-17, 2008 arbitration dates, in apparent disregard of his communications, *id.* ¶¶ 25, 29).

It is premature, however, to dismiss Plaintiff's claims that are based on the AFA's allegedly improper withdrawal of Plaintiff's grievance on April 15, 2008 (*e.g.*, failing to notify Plaintiff that it had withdrawn his grievance, failing to acquire Plaintiff's consent prior to withdrawal, or "misrepresenting [the AFA's] authority to [United] regarding the settlement of Plaintiff's grievance," *id.* ¶ 29). The court must assume as true Plaintiff's allegations that the AFA told him in 2007 that it did not represent him in the grievance, that Plaintiff told the AFA in 2008 that it had no authority to withdraw his grievance, and that he did not know until January 2011 that the AFA had withdrawn his grievance. Assuming those allegations are true, Plaintiff did not have actual knowledge of these claims until January 2011.

Applying *Stone*, however, Defendants argue that Plaintiff *should have* known that his grievance had been withdrawn on April 15, 2008, or at least had some duty to inquire about the grievance during the over two and one-half years

prior to January 2011.  They point, for example, to the paraphrases of Plaintiff's April 2, 2008 letter[3] to the AFA, where Plaintiff apparently told the AFA it had no authority to "withdraw his grievance without his consent" -- inferring that the AFA must have therefore previously told Plaintiff it was planning to withdraw his grievance or that Plaintiff was "worried that AFA might withdraw his grievance." Doc. No. 39-1, AFA Mot. at 8.  While Defendants' arguments may well have merit on an evidentiary record, the court declines to bar these claims at this early pleading stage.  Doing so now requires the court to make assumptions and inferences -- in favor of Defendants -- regarding the substance of letters (the March 20, 2008 letter from the AFA to Plaintiff, and the April 2, 2008 letter from Plaintiff to the AFA).  The court, however, is required to "draw all reasonable inferences in favor of the non-moving party," *i.e.*, Plaintiff not Defendants.  *Morales*, 214 F.3d at 1153.

        In short, it is not clear "from the face" of the Amended Complaint that claims based on the April 15, 2008 withdrawal are time-barred.  *Von Saher*, 592 F.3d at 969.  The Amended Complaint -- construed as true -- states plausible, non-time barred claims based on an allegedly improper withdrawal of Plaintiff's

---

[3] The letter itself is not attached to the Amended Complaint, and is not part of the record. The court must consider the present Motions based solely on the allegations in the Amended Complaint.

grievance.

**B.     State Law Claims Against the AFA Are Preempted**

Plaintiff also appears to be making state law claims for misrepresentation and/or breach of contract against the AFA for its wrongfully withdrawing his grievance in 2008. He alleges that the "AFA misrepresented its authority to settle Plaintiff's grievance with [United] . . . resulting in the unauthorized [withdrawal] of plaintiff's grievance on or about April 15, 2008 and misrepresented to plaintiff that it would notify [United] that AFA was no longer representing plaintiff[.]" Doc. No. 34, Am. Compl. ¶ 39. Similarly, he alleges that the "AFA breached whatever remaining duty it had with plaintiff when it withdrew his grievance on or about April 15, 2008 without obtaining his consent to do so[.]" *Id.* ¶ 52.

To the extent Plaintiff states misrepresentation and/or breach of contract claims, they are identical to his breach of duty of fair representation claims, and are therefore preempted by the RLA. *See, e.g.*, *May v. Shuttle, Inc.*, 129 F.3d 165, 179 (D.C. Cir. 1997) ("[T]he federal duty of fair representation preempts identical state law claims.") (citing *Nellis v. Air Line Pilots Ass'n*, 15 F.3d 50, 51 (4th Cir. 1994)); *Lindsay v. Ass'n of Prof'l Flight Attendants*, 581 F.3d 47, 59 n.6 (2d Cir. 2009)); *cf. Adkins v. Mireles*, 526 F.3d 531, 538-42 (9th Cir.

2008) (holding that state law breach of contract, bad faith, negligent misrepresentation, fraud and deceit claims were preempted because they implicate the federal statutory duty of fair representation under the LMRA). The state law claims are dismissed.[4]

## C. Transfer of Venue to the Northern District of Illinois

Defendants argue, in the alternative, that the entire action should be transferred to the U.S. District Court for the Northern District of Illinois, in Chicago, under 28 U.S.C. § 1404. In an exercise of discretion, the court DENIES this alternative request.

Section 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In determining whether the convenience of parties and the interest of justice requires transfer of venue, the Ninth Circuit has articulated several factors that the district court may consider, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum,

---

[4] Plaintiff indicated at the hearing that he did not object to dismissal of the state law claims as preempted, provided that at least a portion of his hybrid claim would go forward.

>  (5) the contacts relating to the plaintiff's cause of action
> in the chosen forum, (6) the differences in the costs of
> litigation in the two forums, (7) the availability of
> compulsory process to compel attendance of unwilling
> non-party witnesses, and (8) the ease of access to sources
> of proof.

*Jones*, 211 F.3d at 498-99. Further, "the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing." *Id.* at 499. Ultimately, however, "[w]eighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge." *Commodity Futures Trading Comm. v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

Considering these factors, Defendants have not met their burden to demonstrate a "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co.*, 805 F.2d at 843. Even if Plaintiff was domiciled or based in San Francisco for purposes of his employment with United, he has apparently lived in Hawaii since at least 1985. He lived in Hawaii when United terminated him, and when the AFA allegedly breached its duty of fair representation. Although the CBA was negotiated in Chicago, the issue in this case is not with negotiations creating the CBA, but rather with its application or the meaning of its terms. The location of the relevant documents themselves is a neutral factor. Most of the remaining dispute concerns whether the AFA had authority to withdraw Plaintiff's grievance in 2008, and whether it had ceased to

represent him.  As for the availability of compulsory process regarding non-party witnesses, Plaintiff indicates his three potential non-party medical providers are located in Hawaii, while Defendants' witnesses are apparently party witnesses. Even if some of the witnesses are located in Chicago, the balance of factors is neutral.  The court, therefore, respects Plaintiff's choice of forum and DENIES the alternative request to transfer the case.

## V. **CONCLUSION**

The Motions are GRANTED IN PART and DENIED IN PART.  The Motions to Dismiss are DENIED as to hybrid claims based upon the AFA's allegedly improper withdrawal of Plaintiff's grievance on April 15, 2008.  In other respects, however, the Motions to Dismiss are GRANTED.  The court DENIES the alternative request to transfer venue to the Northern District of Illinois.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 10, 2012.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Heidler v. Ass'n of Flight Attendants-CWA et al.*, Civ. No. 11-00427 JMS/RLP, Order Granting in Part and Denying in Part Defendants' Motions to Dismiss or, in the Alternative, for Transfer of Venue